UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN OBAOYE, on behalf of himself, individually, and on behalf of all others similarly-situated,

Plaintiff,

-against-

**Docket No.: 1:25-cv-4920-MKV**

METRO CARE MANAGEMENT LLC d/b/a ESSEN HEALTH CARE,

Defendant.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS-MOTION TO DISMISS AND REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, DISCLOSURE OF CONTACT INFORMATION, LEAVE TO DISTRIBUTE NOTICE, AND EQUITABLE TOLLING**

Edgar M. Rivera, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.
BORRELLI & ASSOCIATES, P.L.L.C.
910 Franklin Avenue, Suite 205
Garden City, New York 11530
Tel. (516) 248-5550
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 5

I. PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION .......... 5

A. Plaintiff Has Suffered Injury-in-Fact .......... 5

B. Because Opt-in Plaintiffs Provide Their Own Standing, Plaintiff's Period of Employment Is Irrelevant .......... 8

C. The Supreme Court's Decision in Bristol-Meyers Squib Has No Bearing on This Case 9

D. Plaintiff's Work Performance and Resignation Have Nothing to Do With Standing 11

II. PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION .......... 12

A. Plaintiff's Declaration and the Complaint Easily Meet the Modest Factual Showing Required at the First Step of Conditional Certification .......... 12

B. The Court Should Grant Equitable Tolling While It Decides This Motion .......... 13

C. The Proposed Collective Action Group of Clinical Care Workers Is Not "Overbroad" 15

D. The Proposed "Mechanics of Notice" Is Not "Overbroad" .......... 16

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Cases**

*Abou-el-Seoud v. United States*, 136 Fed. Cl. 537 (2018) ........ 7

*Bocel v. Patzeria Fam. & Friends Inc.*, 2022 WL 1125624 (S.D.N.Y. Apr. 15, 2022) ........ 2

*Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55 (E.D.N.Y. 2008)........ 8

*Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017)........ 2, 9, 10

*Brown v. Allied Commc'ns Corp.*, 2020 WL 868207 (S.D. Ohio Feb. 21, 2020)........ 7

*Cabrera v. Stephens*, 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017)........ 14

*Carter v. Healthport Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ........ 5, 6

*Chavez v. James McGowan & Sons of Sea Cliff, Inc.,* 2:25-cv-004110-SJB-SIL (E.D.N.Y. November 5, 2025)........ 14

*Collins v. Ne. Grocery, Inc.*, 149 F.4th 163 (2d Cir. 2025) ........ 7

*Cuaya v. VI Dev. Grp., LLC*, 2020 WL 5494371 (S.D.N.Y. Sept. 10, 2020)........ 13

*Douglas v. Anthem Prods., LLC*, 2019 WL 78988 (S.D.N.Y. Jan. 2, 2019) ........ 8

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ........ 6

*Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528 (S.D.Tex. 2008) ........ 15

*Garcia Ramos v. DNC Food Serv. Corp.*, 2020 WL 2832776 (S.D.N.Y. June 1, 2020) ........ 14

*Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163 (S.D.N.Y. 2020), *aff'd*, 28 F.4th 435 (2d Cir. 2022)........ 8

*Hernandez v. City of New York*, 2017 WL 2829816 (S.D.N.Y. June 29, 2017)........ 17

*Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110 (2d Cir. 2023)........ 2, 11

*Indergit v. Rite Aid Corp.*, 2009 WL 1269250 (S.D.N.Y. May 4, 2009)........ 7, 8

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ........ 18

*Jean-Louis v. Carrington Mortgage Services*, 2020 WL 1042644 (E.D.N.Y. Mar. 4, 2020) ...... 10

*Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439 (S.D.N.Y. 2013) .......................... 13

*Lopez v. St Luke's Roosevelt Hosp. Ctr.*, 2024 WL 836480 (S.D.N.Y. Feb. 28, 2024) ............... 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................... 5, 16

*Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013).................... 11

*Mirza v. Dolce Vida Medical Spa, LLC*, 2024 WL 307969 (S.D.N.Y. Jan. 26, 2024)................ 10

*Morris v. Lettire Const.*, Corp., 896 F. Supp. 2d 265 (S.D.N.Y. 2012)...................................... 13

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d. Cir. 2010).............................................................. 2, 3

*NRDC v. Johnson*, 461 F.3d 164 (2d Cir. 2006)...................................................................... 5, 6

*Orbetta v. Dairyland USA Corp.*, 2024 WL 3385640 (S.D.N.Y. July 12, 2024)........................ 14

*Pineda v. Big City Realty Mgmt.*, LLC, 2024 WL 5146068 (E.D.N.Y. Dec. 17, 2024).............. 14

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014)........................................................................... 9

*Rieske v. Gov't Emps. Ins. Co. Inc.*, 2022 WL 17127745 (E.D.N.Y. Nov. 22, 2022)...... 12, 13, 17

*Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014).......................... 13

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) ....................................... 3, 16

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) ................................................ 5

*TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726 (S.D.N.Y. 2011) ............................................... 5

*Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44 (2d Cir. 2018)..................................... 18

*Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012) ............................................. 15

*Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011) .................. 14

*Yap v. Mooncake Food Inc.*, 146 F. Supp. 3d 552 (S.D.N.Y. 2015) .......................................... 18

*Zambrano v. Strategic Delivery Sols., LLC*, 2021 WL 4460632 (S.D.N.Y. Sept. 28, 2021) ......... 9

**Statutes**

29 U.S.C. § 207(a) ........................................................................................................ 2, 6, 11

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................................ 1, 2, 5

## PRELIMINARY STATEMENT

In this wage and hour collective action, Plaintiff John Obaoye submits this Memorandum of Law in opposition to Defendant Metro Care Management LLC d/b/a Essen Health Care's Cross-Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and as a reply to Defendant's opposition to his Motion for Conditional Certification of a Fair Labor Standards Act ("FLSA") collective action and related relief.[1]

In its Cross-Motion, Defendant, frivolously, argues that Plaintiff lacks Article III standing because, based on Defendant's timesheets, Defendant claims that Plaintiff was paid correctly for each hour that he worked. This argument of course has nothing to do with standing – it goes straight to the merits. And more importantly, it entirely ignores Plaintiff's theory of liability, which is that, as expressly pleaded in the Complaint, Defendant required Plaintiff, and Defendant's other clinical care coordinators, whom Plaintiff alleges are similarly-situated to him, to work hours off the clock, which time, by its very nature, would not be reflected in Defendant's timesheets. As Plaintiff has alleged that he did not receive wages, regular or overtime, for this off-the-clock time, he has pleaded that he suffered an injury-in-fact and, therefore, has standing.

Defendant further argues that, with respect to any potential collective action members, Plaintiff "cannot establish standing for claims outside his employment period." But Plaintiff's employment period has no impact whatsoever on standing with respect to putative collective action members. Unlike Rule 23 class actions, the FLSA does not require that each plaintiff possess the same interest or the same injury. By becoming parties to the action, the opt-in plaintiffs provide the necessary standing with respect to their own individual claims. Therefore, Plaintiff's employment period is irrelevant to the analysis.

[1] Zion Vazquez opted into this action on November 7, 2025. (Dkt. No. 13.)

Defendant also argues, nonsensically, that under *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), Plaintiff's remote work from Maryland somehow means that it is not subject to general *in personam* jurisdiction in a New York court. This argument deliberately ignores that courts within the State of New York may exercise general jurisdiction over Defendant with respect to claims arising anywhere, as New York is the state of Defendant's organization and also its principal place of business.

Defendant finally argues that Plaintiff's resignation and alleged work performance issues somehow undermine standing. This has nothing to do with overtime claims under the FLSA, under which an employer who "employ[s] any of his employees . . . for a workweek longer than forty hours" must compensate that employee for the additional hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Employees who are entitled to, but improperly denied, overtime . . . may sue to recover unpaid overtime compensation . . ." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113-14 (2d Cir. 2023). That is the entire analysis. As such, the Court should deny Defendant's Motion to Dismiss under Rule 12(b)(1).[2]

Turning to Plaintiff's Motion for Conditional Certification, in opposition, Defendant argues that Plaintiff cannot make the "modest factual showing required for conditional certification" by relying "solely on his declaration." Defendant simply ignores that plaintiffs can meet their burden at the conditional certification stage by "relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Bocel v. Patzeria Fam. & Friends Inc.*, 2022 WL 1125624, at *2 (S.D.N.Y. Apr. 15, 2022); *see Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("[the modest factual showing] should remain a low

[2] Defendant's Cross-Motion is actually so frivolous that Plaintiff considered, but ultimately decided not to, file a separate motion for sanctions.

standard of proof"). Plaintiff's declaration is sufficiently detailed to meet his burden on the relevant case law.

Next, Defendant argues that Plaintiff is not entitled to equitable tolling because it is an "extraordinary remedy," and then mischaracterizes Plaintiff's request as seeking "tolling . . . that spans years before his employment . . ." Defendant offers no argument for Plaintiff's specific request, which is that tolling would be appropriate while this motion is pending, especially given that Defendant filed its baseless Cross-Motion, thereby extending the briefing schedule.

Defendant then argues that Plaintiff is not similarly-situated to the group that he proposes (*i.e.,* clinical care coordinators) because his employment was "remote," "short in duration," and "supervisor-driven." Defendant's argument fails, as Defendant misapprehends Plaintiff's low burden of making "a modest factual showing" that he and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Veleva v. Sebastian's Pizzeria Inc.*, 2025 WL 507703, at *2 (S.D.N.Y. Feb. 14, 2025) (Vyskocil, *J.*) (citing *Myers*, 624 F.3d at 554-55); *see Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020) ("plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims [and] dissimilarities in other respects should not defeat collective treatment.") (internal quotations omitted). Defendant fails to meaningfully dispute the governing legal standard set forth in the Second Circuit's decision in *Scott v. Chipotle*, as well as the scores of district court cases from within the Second Circuit applying it. As a result, Defendant entirely fails to undermine Plaintiff's modest factual showing that he and other non-managerial clinical care coordinators were similarly-situated because Defendant required them to work in excess of forty hours in a week without overtime pay for that time. Instead, Defendant attempts to manufacture heightened evidentiary burdens, raise credibility disputes, and advance

merits-based arguments that courts in this Circuit, including this Court, have repeatedly rejected at the conditional certification stage.

Next, Defendant argues that the proposed collective action group is overbroad because "[i]t spans employees outside of Plaintiff's employment period, across multiple states, under different supervisors, and [] different entities." The proposed collective action group consists of "current and former non-managerial employees of Defendant, who at any time between June 11, 2022, and the present, performed any work for Defendant as a clinical care coordinator, or in a similar role, and who consent to file a claim to recover unpaid overtime compensation and liquidated damages that are legally due to them." This group consists of individuals who performed similar, if not the same, tasks, were subject to the same laws and regulations, were paid in the same or similar manner, were required to work in excess of forty hours in a workweek, and were not paid the required rate of one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty, regardless of when they worked, where they worked, or under which supervisor they worked.

Finally, in a blink-and-you-missed-it sentence at the end of its brief, Defendant argues against sending reminder notices and any communications but regular mailings to putative collective action members, and also seeks to limit the opt-in period to forty-five days, both of which are contrary to the prevailing wisdom of this Circuit, this District, and this Court, and the policy of informing as many individuals as possible of their right to participate in this collective action.

In sum, as explained in Plaintiff's opening brief and in further detail below, the Court should deny Defendant's cross-motion and grant Plaintiff's motion in its entirety.

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION

#### *A. Plaintiff Has Suffered Injury-in-Fact*

The requirements for Article III standing are well established:

> [I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.,* a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (*i.e.,* a "fairly . . . trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Standing challenges can be facial or factual. *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). A facial challenge considers the sufficiency of the allegations in the complaint to support standing. *Id*. A factual challenge, on the other hand, questions the existence of standing. *Id.* at 57. In such circumstances, the court may consider evidence outside the pleadings but should not consider *any conclusory or hearsay statements* included in the evidence. *Id.*; *TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726, 733-34 (S.D.N.Y. 2011) ("In resolving a motion to dismiss . . . under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings, but it may not rely on conclusory or hearsay statements contained in such evidence."). If the defendant's evidence is immaterial and does not contradict the plausible allegations of standing in the complaint, the plaintiff may rely on the allegations in the pleading. *Carter*, 822 F. 3d at 57. In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court "take[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of [the] plaintiff." *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation marks omitted).

Here, Defendant makes a factual challenge, going outside of the pleadings by relying on timesheets and a witness affidavit. Defendant argues that Plaintiff lacks standing because, based on its own timesheets, Defendant paid Plaintiff for each hour worked. As Defendant's evidence is "immaterial and does not contradict the plausible allegations of the complaint," Plaintiff may rely on the allegations in the pleadings, *Carter*, 822 F. 3d at 57, which the Court must take as true and draw all reasonable inferences in Plaintiff's favor. *See NRDC*, 461 F.3d at 171. Nevertheless, Plaintiff also relies on statements contained in the Declaration of Plaintiff John Obaoye ("Obaoye Decl.") that he submitted in support of his conditional certification motion.

Indeed, "the FLSA requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week. The rate of overtime pay must be 'not less than one and one-half times the regular rate' of the employee's pay." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016) (quoting 29 U.S.C. § 207(a)). As stated in the Complaint and the Obaoye Decl., Plaintiff worked for Defendant remotely as a clinical care coordinator, in excess of forty hours in a week throughout virtually each week of his employment, and Defendant failed to pay him at all, let alone at one-and-one half times his regular rate of pay, for all hours that he worked in excess of forty in a week. (Obaoye Decl. ¶¶ 3-10; Compl. ¶¶ 15-20). More specifically, Defendant directed Plaintiff to clock out by 5:00 p.m. regardless of the fact that he continued to work, or he would be reprimanded, hence Plaintiff's requests for adjustments. (Compl. ¶¶ 12 and 19; Obaoye Decl. ¶ 8.) Indeed, in addition to pleading this theory generally throughout his employment, the Complaint specifies a two-week period, from March 14 through March 27, 2024, as an example of an instance in which Defendant required Plaintiff to work, and Plaintiff did work, a total of 102 hours (forty-six during the first week and fifty-six during the second week), and Defendant did not pay him for each hour worked in excess of forty at all, and

thus not at the rate of one-and-one half times his regular rate. (Compl. ¶ 20). Defendant's argument ignores the fact that Plaintiff's claim is based on time he worked *off the clock*, and therefore, by definition, his claim and injuries are based on time worked that would not appear on Defendant's timesheets. Accordingly, Plaintiff has shown injury-in-fact and has standing. *See, e.g., Brown v. Allied Commc'ns Corp.*, 2020 WL 868207, at *4 (S.D. Ohio Feb. 21, 2020) ("Plaintiff unquestionably has standing to sue Defendants. Plaintiff has alleged an injury in fact: He worked approximately 10 overtime hours per week, yet was not paid overtime compensation at the rate of one and one-half times his regular rate of pay for those hours as required by . . . the FLSA . . . Plaintiff's injury is concrete, particularized, and actual. Plaintiff also has alleged conduct that is 'fairly traceable' to Defendants: Defendants were his employers, and, as such, were responsible to pay him overtime compensation for all overtime hours worked. Instead, they paid him only straight time for the weekly overtime hours worked. Finally, the conduct of which Plaintiff complains is likely to be redressed with a favorable judicial decision: It is a violation of . . . the FLSA . . . to fail to pay a non-exempt employee overtime compensation at the rate of one and one-half times his regular rate of pay for overtime hours worked."); *Abou-el-Seoud v. United States*, 136 Fed. Cl. 537 (2018) ("[plaintiff] had Article III standing to pursue claim . . . to recover overtime compensation allegedly willfully withheld from her . . . in violation of Fair Labor Standards Act (FLSA), since employee alleged injury-in-fact from deprivation of overtime wage . . ."); *Indergit v. Rite Aid Corp.*, 2009 WL 1269250, at *1-6 (S.D.N.Y. May 4, 2009) (noting that a "claim that [Plaintiff] was deprived of overtime compensation sets forth an injury-in-fact.").

Tellingly, none of the cases that Defendant cites involve the FLSA at all, let alone collective actions under it. In *Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 171 (2d Cir. 2025), the plaintiffs lacked Article III because they did not plead that they suffered any individual harm

arising from defendants' allegedly imprudent and/or disloyal management of investment options in which they did not personally invest or suffer any harm. Similarly, in *Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163, 169 (S.D.N.Y. 2020), *aff'd*, 28 F.4th 435 (2d Cir. 2022), plaintiff's assertions failed to demonstrate how deficient website information caused concrete injury under the Americans with Disabilities Act. Neither of these cases is applicable or instructive here. Unquestionably, Plaintiff has pleaded that he suffered injury-in-fact and has standing.

### *B. Because Opt-in Plaintiffs Provide Their Own Standing, Plaintiff's Period of Employment Is Irrelevant*

Defendant next argues Plaintiff fails to demonstrate that he has "class standing." But Defendant confuses the standing requirements to maintain a Rule 23 class action with those of an FLSA collective action. "The FLSA . . . does not require that a plaintiff possess the 'same interest' and 'same injury' as members of a collective, as is required in Rule 23 class actions." *Douglas v. Anthem Prods., LLC*, 2019 WL 78988, at *4 (S.D.N.Y. Jan. 2, 2019). Instead, so long as the named plaintiff in an FLSA action has standing as to his or her own individual claim, a collective action can be certified as to other similarly situated employees. *Id.* Nothing more is required. Whether a collective action should be certified depends solely on whether a plaintiff is able to meet the additional criteria encompassed by the FLSA. *See Indergit*, 2009 WL 1269250, at *3-6 ("Because [Plaintiff] has individual standing, he is entitled to proceed with his [collective action] FLSA . . . claims."). And, unlike in a Rule 23 class action, the named plaintiff in an FLSA collective action is not permitted to pursue claims on behalf of absent parties. Instead, "a collective action brought under the FLSA is binding only upon those employees who affirmatively 'opt in' by giving consent in writing to become a party to the action." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 81 (E.D.N.Y. 2008). By becoming parties to the action, the opt-in plaintiffs provide the necessary standing with respect to their own individual claims. *Id.* (citing *Zambrano v. Strategic Delivery*

*Sols., LLC*, 2021 WL 4460632, at *8 (S.D.N.Y. Sept. 28, 2021) ("Courts in this Circuit have . . . held that opt-in plaintiffs become parties to a FLSA action upon filing written consent, which renders the opt-in plaintiff party to the lawsuit through a separate action joined to the original lawsuit, which commences on the date written consent is filed.") (quotation omitted).

The duration of Plaintiff's employment is thus utterly irrelevant to the issue of standing for either Plaintiff or potential opt-ins, and Defendant cites no authority that establishes a minimum tenure or that precludes a plaintiff from recovering lost wages simply because he worked for the employer for eight months, or that a named plaintiff in an FLSA collective action is required to have been employed by the defendant for the entire three-year notice period to satisfy standing requirements, as standing and statutes of limitation are fundamentally different legal concepts. *See Veleva*, 2025 WL 507703, at *4 ("Because Plaintiff's federal FLSA claims have a three-year limitations period, if proven to be willfully committed by Defendants, an opt-in notice period of three years prior to the filing of the original Complaint is appropriate in this case."). In *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014), the only case cited by Defendant on this issue, the Second Circuit affirmed the denial of *Rule 23 class action* certification due to lack of standing to assert claims related to certificates issued by trusts, in which no plaintiff ever invested. *Id.* at 159. That case does not remotely support Defendant's argument that a named plaintiff in an FLSA collective action must be employed during the entirety of the notice period. Accordingly, Defendant fails to provide any reason for the Court to dismiss this case based on standing.

### *C. The Supreme Court's Decision in Bristol-Meyers Squib Has No Bearing on This Case*

Defendant's argument concerning *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 267-69 (2017), regarding specific jurisdiction, is hard to fathom. There,

the Supreme Court held that due process did not permit the exercise of general personal jurisdiction over non-resident consumers' claims against a non-resident defendant. But here, Plaintiff sued Defendant in its home state of New York, where Defendant is both organized and maintains its principal place of business, and thus in which courts exercise general jurisdiction over Defendant. (Compl. ¶ 9) ("At all relevant times, Defendant was and is a New York limited liability company with its principal place of business located in 2626 Halperin Avenue, Bronx, New York 10461);[3] *see Mirza v. Dolce Vida Medical Spa, LLC*, 2024 WL 307969, at * 4 (S.D.N.Y. Jan. 26, 2024) (in a case arising out of conduct not related to the company's jurisdictional contacts, the court accepted that the LLC's principal place of business and place of organization would have been sufficient to support general *in personam* jurisdiction); *Jean-Louis v. Carrington Mortgage Services*, 2020 WL 1042644, at * 3 (E.D.N.Y. Mar. 4, 2020) (accepting that the LLC's principal place of business and place of organization were sufficient to support general jurisdiction in a case arising out of conduct not related to the company's jurisdictional contacts). In fact, as the Supreme Court in *Bristol-Meyers Squibb* advised: "Our decision does not prevent the [] out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction . . ." 582 U.S. at 268. As such, *Bristol-Meyers Squibb* is inapplicable here because courts within New York exercise general jurisdiction over Defendant. Again, Plaintiff does not use this word lightly, but it was frivolous for Defendant to suggest otherwise.

[3] Plaintiff requests that the Court take judicial notice of the entity information page of the New York Department of State Division of Corporations for Metro Care Management LLC, which clearly states that it is a "domestic limited liability company" organized under New York law. "Metro Care Management LLC," New York Department of State, Division of Corporations, https://apps.dos.ny.gov/publicInquiry/EntityDisplay.

### *D. Plaintiff's Work Performance and Resignation Have Nothing to Do With Standing*

In addition to the specious arguments above, Defendant maintains that, because Plaintiff received multiple corrective actions and warnings for failings to complete assignments, and ultimately resigned, that any time he spent beyond his scheduled hours "reflected his own inability to complete assigned tasks efficiently" and, presumably, were not compensable. This argument imposes a heightened standard that an employee must do more than simply work to earn his wages but also win his employer's satisfaction to be paid, which is obviously not required by the FLSA.

Under the FLSA, an employer who "employ[s] any of his employees . . . for a workweek longer than forty hours" must compensate that employee for the additional hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Employees who are entitled to, but improperly denied, overtime . . . may sue to recover unpaid overtime compensation . . . " *Herrera*, 84 F.4th at 113-14. To plead such claims, "plaintiffs must sufficiently allege '40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *Id.* (quoting *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013)). "Nothing more is required." *Id.* Certainly, alleged employee "inefficiency" is neither a basis for an employer not to pay its employees nor a defense against an unpaid overtime claim.

Unsurprisingly, Defendant cites no authority in support of this argument. Indeed, Defendant's argument all but concedes Plaintiff's theory of the case - - that Defendant gave its clinical care coordinators an amount of work that could not be completed during scheduled hours and did not pay them for this time worked off the clock, reaping the economic benefits of unpaid labor.

The Court should deny Defendant's Cross-Motion with ease.

## II. PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION

### *A. Plaintiff's Declaration and the Complaint Easily Meet the Modest Factual Showing Required at the First Step of Conditional Certification*

Defendant argues that Plaintiff's motion fails because he relies solely on his own declaration, which contains "only vague and conclusory allegations about other employees' experiences without specific details about conversations with other employees or their working conditions."

But as set forth in Plaintiff's opening brief, Plaintiff submitted a detailed declaration, describing his job duties as a non-managerial clinical care coordinator, his work schedules of more than forty hours in a week, Defendant's failure to compensate him at the statutorily required overtime rate of one and one-half times his regular rate of pay for all hours worked over forty in a week, and his personal experience and conversations with his co-workers, five of whom he specifically recounted, about them having worked similar hours and having been paid in the same way. (Obaoye Decl. ¶¶ 11-12; Compl. ¶¶ 4-12). This far exceeds the evidence that courts in this Circuit, District, and even this Court, deem sufficient to grant conditional certification. *See, e.g., Veleva*, 2025 WL 507703, at *3 (granting conditional certification based on the named-plaintiff's declaration stating plaintiff and all others similarly situated had substantially similar job requirements, pay provisions, and similar duties). Contrary to Defendant's argument, there is no requirement for a plaintiff to provide "supporting declarations from other employees" to support his allegations. *See Rieske v. Gov't Emps. Ins. Co. Inc.*, 2022 WL 17127745, at *6 (E.D.N.Y. Nov. 22, 2022) ("It is well-recognized that the burden at the conditional certification stage is so low that even Plaintiff's lone affidavit setting forth a common payment scheme may suffice . . . Plaintiff has set forth sufficient facts to support the modest factual showing that Defendant's Adjusters were all subject to common compensation and timekeeping practices, and routinely worked off-the-

clock, in excess of their allotted 7.75 hours per day, without compensation, due to Defendant's common practices."); *Cuaya v. VI Dev. Grp., LLC*, 2020 WL 5494371, at *6 (S.D.N.Y. Sept. 10, 2020) (granting conditional certification based on one declaration that was replete with anecdotal hearsay and ambiguous observations and collecting cases); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445-46 (S.D.N.Y. 2013) (recognizing that "the burden is so low [at the conditional certification stage] that even one or two affidavits establishing the common plan may suffice"); *see also Morris v. Lettire Const.*, Corp., 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012) (observing that to grant conditional certification, courts neither "weigh the merits of the plaintiff's underlying claims" nor "resolve factual disputes or evaluate credibility").

As in *Rieske*, Plaintiff here has set forth that Defendant's non-managerial clinical care coordinators were all subject to the common compensation practice of not being paid at the overtime rate of one-and-one half times their regular rate, and that they all worked similar hours, which regularly exceeded forty in a week. 2022 WL 17127745, at *6. Unlike in *Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014), and *Lopez v. St Luke's Roosevelt Hosp. Ctr.*, 2024 WL 836480 (S.D.N.Y. Feb. 28, 2024), the two cases Defendant cites in its brief, Plaintiff attested that he and his co-workers worked remotely and regularly complained among themselves about these pay practices through Defendant's cloud-based software application and on their personal cellphones during Plaintiff's eight months of employment. (Obaoye Decl. ¶ 12.) Plaintiff's Declaration and the Complaint easily meet the modest factual showing required at the first step of conditional certification.

### ***B. The Court Should Grant Equitable Tolling While It Decides This Motion***

Defendant argues that equitable tolling should be denied for the entire three-year statute of limitations period because tolling is an "extraordinary remedy" that applies only in "rare and exceptional circumstances." But Plaintiff's request for tolling is limited to the time from the date

on which Plaintiff filed this Motion until the Court rules on it. Plaintiff makes this narrow request because "[t]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." *Pineda v. Big City Realty Mgmt., LLC*, 2024 WL 5146068, at *7 n.2 (E.D.N.Y. Dec. 17, 2024) (tolling statute of limitations for sixty days after the date that plaintiff's motion became fully briefed until the date of the order granting plaintiff's motion for court-facilitated notice) (internal quotation marks omitted). Equitable tolling of this limited sort will avoid prejudice to actual or potential opt-in plaintiffs that can arise from the time needed for the Court to issue a ruling on the conditional certification motion. *See, e.g.*, *Orbetta v. Dairyland USA Corp.*, 2024 WL 3385640, at *6–9 (S.D.N.Y. July 12, 2024) (granting equitable tolling starting from the date when plaintiff first requested permission to move for collective action certification until the date conditional certification was granted); *Garcia Ramos v. DNC Food Serv. Corp.*, 2020 WL 2832776, at *10 (S.D.N.Y. June 1, 2020) (granting equitable tolling through at least until the date of the order granting conditional certification); *Cabrera v. Stephens*, 2017 WL 4326511, at *7 (E.D.N.Y. Sept. 28, 2017) (granting equitable tolling for the time period needed for the court to issue a ruling on the conditional certification motion). Indeed, the certification of a collective action in itself justifies equitable tolling "to avoid inequitable circumstances" for plaintiffs that provide written consent to join the case. *Chavez v. James McGowan & Sons of Sea Cliff, Inc.*, 2:25-cv-004110-SJB-SIL, at *11 (E.D.N.Y. November 5, 2025) (quoting *Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)). This request is even more appropriate here, where Defendant has extended the time under which Plaintiff's motion is pending by making its frivolous Cross-Motion. Plaintiff thus requests

that the Court toll the statute of from the date on which Plaintiff originally filed this Motion until the Court decides on it.

### *C. The Proposed Collective Action Group of Clinical Care Workers Is Not "Overbroad"*

Defendant argues that Plaintiff is not similarly situated to the nationwide group he proposes because his employment was "remote," "short in duration," and "supervisor-driven," and, therefore, the proposed collective is overboard. Defendant proposes that any notice must be confined to "employees who worked during Plaintiff's employment period, under the same supervisor, and in the same work context and State of Maryland." Defendant's argument is misplaced and is insufficient to defeat Plaintiff's request for conditional certification.

"Conditional certification is appropriate even though [] plaintiffs allege that the FLSA violations [are] caused by a widespread de facto policy carried out by individual managers." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 408-09 (S.D.N.Y. 2012) (citing *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536–37 (S.D.Tex. 2008) (rejecting the notion that "an informal policy requiring off-the-clock work cannot be litigated collectively where a large number of plaintiffs were employed at many different locations and the decision to allow or require off-the-clock work was carried out by individual managers")). "The plaintiffs need not show that 'all managers nationwide acted in lockstep' in order to make a modest factual showing that they were subject to a common policy or practice." *Id*. Plaintiff here has attested that several managers, who supervised employees, both remote and in person, inside and outside of Maryland, New York, and several other states, committed FLSA violations, and that, in at least some instances, these managers tied their actions to an overarching policy of Defendant to minimize the accrual of overtime. (Obaoye Decl. ¶13; Compl. ¶ 12) ("In fact, all of Plaintiff's supervisors told Plaintiff that if he wanted to be paid for time worked outside of his regular schedule, he would have to use

accrued paid leave."). Concluding that each of these managers was acting in an errant or rogue fashion would be improper, as it would prejudice the merits of these allegations at the preliminary stage. *See Lujan*, 2011 WL 317984, at *7.

Defendant's argument that some employees worked under different supervisors or remotely from different states similarly fails to meet muster, as it does not address Plaintiff's allegation that all clinical care coordinators were subjected to a common policy to deprive them of overtime pay, and that they thus "share one or more similar questions of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 521. Some clinical care coordinators, like Plaintiff, worked remotely from anywhere in the country. There is no reason to distinguish a clinical care worker who worked in Maryland, New York, or anywhere else. Plaintiff's Declaration at this point more than satisfies what is required under the modest step-one standard for conditional certification.

### *D. The Proposed "Mechanics of Notice" Is Not "Overbroad"*

Defendant argues that "[n]otice should be further limited to mail only, exclude text messages or internal platforms that risk confusion or coercion, and provide a single opt-in period of no more than forty-five (45) days with no reminder notice," citing "*Sanchez v. JMP Ventures L.L.C.*, 2014 U.S. Dist. LEXIS 14980, at *6," without any explanation. *Nowhere* in *Sanchez* does the court discuss limiting notices or excluding text messages or other mediums of communication, nor does it suggest the superiority of "a single opt-in period of no more than forty-five days with no reminder notice." In fact, the court there denied plaintiff's motion and never reached the issue of the contents of the notice. *Sanchez* offers no support for Defendant's argument and can be completely ignored.

With respect to the proposed notice, Plaintiff has provided numerous authorities in his opening brief allowing permitting the sending of reminder notices to the potential opt-in plaintiffs

thirty days after the original mailing of notice in order to remind any potential collective members who have not yet joined the case of the impending deadline for their response, which would be sixty-days after sending the original notice. *See, e.g.*, *Rieske*, 2022 WL 17127745, at *1 (granting plaintiff's request to send reminder notices to potential members and sixty-day opt-in period). Plaintiff has done the same with respect to sending the original and reminder notices by email and by text message containing a link to the notices hosted on Plaintiff's Counsel's website. Consistent with the policy of informing as many individuals as possible, notice by email and text message is likely to be a viable and efficient means of communicating with many prospective members of this particular collective action. *See, e.g., Veleva*, 2025 WL 507703, at *2 (authorizing dissemination of notice via email and/or text messages, to all potential members of the collective); *Mendez v. Sweet Sam's Baking Co. LLC*, 2019 WL 13394599, at *1 (S.D.N.Y. May 23, 2019) ("Defendants go too far in arguing that courts endorse text-message notification *only* where a plaintiff establishes that the defendant's industry is subject to high turnover, and Plaintiffs need not show that first-class mail will be inadequate on its own) (internal citations omitted). Courts have also allowed plaintiffs to send notice through other electronic methods where there is justification to do so, such as here, where there is no physical workplace at which to post a notice. *See, e.g., Ding v. Mask Pot Inc*., 347 F.R.D. 417, 432 (E.D.N.Y. 2024) (ordering that notices be disseminated by email, SMS text message, WhatsApp, and WeChat).

Moreover, courts also routinely approve of sixty-day opt-in periods. *See, e.g., Hernandez v. City of New York*, 2017 WL 2829816, at *9 (S.D.N.Y. June 29, 2017) (holding that a sixty-day notice period is appropriate after recognizing that "[c]ourts in the Second Circuit generally provide opt-in periods of 60 days"); *Yap v. Mooncake Food Inc*., 146 F. Supp. 3d 552, 566-67 (S.D.N.Y.

2015) (limiting the notice period to sixty days after finding that "courts in this Circuit routinely restrict the opt-in period to 60 days").

Finally, Defendant has forfeited any other arguments about the form or manner of providing notice by not raising it in opposition to Plaintiff's Motion. *See Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss."); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 169 (S.D.N.Y. 2014) ("[Defendant's] opportunity to object [to the form and content of the proposed notice and consent to sue]. . . was in its opposition to Plaintiff's motion, and the Court therefore considers any objections it may have to be waived.").

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion in its entirety.

Dated: Garden City, New York
February 13, 2026

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
910 Franklin Avenue, Suite 205
Garden City, New York 11530
Tel. (516) 248-5550
Fax. (516) 248-6027

By: ______________________
EDGAR M. RIVERA (ER 1387)
ALEXANDER T. COLEMAN (AC 1717)
MICHAEL J. BORRELLI (MB 8533)