USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN OBAOYE, on behalf of himself, individually, and on behalf of all others similarly-situated,

Plaintiff,

-against-

METRO CARE MANAGEMNET LLC d/b/a ESSEN HEALTH CARE,

Defendant.

1:25-cv-4920-MKV

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION AND DENYING CROSS-MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff initiated this action with the filing of a complaint. [ECF No. 1] (the "Complaint" or "Compl."). He asserts against Metro Case Management LLC (d/b/a "Essen Health Care") (the "Defendant") claims for unpaid overtime under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*; unpaid overtime under the Maryland Wage and Hour Law (the "MWHL"), Md. Code, Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law (the "MWPCL"), Md. Code, Lab. & Empl. §§ 3-501 *et seq.*; failure to pay all due wages under the MWPCL; and unpaid minimum wage under the MWHL and MWPCL. Compl. at 8–11.

He also seeks certification of an FLSA collective consisting of

> Current and former non-managerial employees, who at any time during the applicable FLSA limitations period, performed any work for Defendant as a clinical care coordinator, or in any other similar position, and who consent to file a claim to recover damages for unpaid overtime compensation and liquidated damages that are legally due to them ([the "Would-Be FLSA Plaintiffs"]).

Compl. ¶ 11.

Following Defendant's Answer, [ECF No. 8], Plaintiff moved to certify this collective. [ECF No. 14]. In support, Plaintiff filed a memorandum of law, [ECF No. 15] (the "Motion for Certification" or "MFC")); a declaration by counsel, [ECF No. 16] (the "Rivera Declaration" or

"Rivera Decl."), accompanied by exhibits, [ECF Nos. 14-1–5]; and a declaration of his own, [ECF No. 17] (the "Plaintiff's Declaration" or "Pl. Decl.").

Defendant filed an omnibus cross-motion to dismiss[1] and opposition to the Motion for Certification. [ECF No. 20]. The cross-motion is supported by a memorandum of law, [ECF No. 20-1] (the "Cross-Motion" or "CM"); and an affidavit of counsel, [ECF No. 20-2] (the "Novitz Declaration" or "Novitz Decl."), attaching as exhibits Plaintiff's timesheets, [ECF No. 20-3] (the "Timesheets"), and an affidavit of the overseer of his former supervisors [ECF No. 20-4] (the "Olsen Declaration" or "Olsen Decl.").

Plaintiff replied in support of the Motion for Certification and in opposition to the Cross-Motion. [ECF No. 26] (the "Reply"). Defendant replied in support of the Cross-Motion. [ECF No. 27] (the "Cross-Reply" or "CR").

## BACKGROUND[2]

Defendant operates a network of healthcare providers across New York City. Compl. ¶ 1. Plaintiff, working remotely from Maryland, was employed by Defendant from December 17, 2023, until August 27, 2024. *Id.* He worked as a "clinical care coordinator," with responsibilities that included "monitoring the health status of patients, identifying their medical and social needs, and coordinating appropriate care in collaboration with the primary care provider and other members of the patient's care team." Compl. ¶¶ 15–16. Defendant required that every patient interaction be documented by 8:00 a.m. the day after it occurred. Compl. ¶ 16.

---

[1] The cross-motion to dismiss asserts lack of standing and, very obliquely, personal jurisdiction. The latter argument, which borders on frivolity, was in any event forfeited when Defendant failed to raise it in its answer to the Complaint. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) ("It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading." (citing Fed.R.Civ.P. 12(h)).

[2] In evaluating Plaintiff's Motion for Certification, the Court may properly consider Plaintiff's "own pleadings, affidavits, and declarations." *Sanchez v. Clipper Realty, Inc.*, No. 21-cv-8502 (KPF), 2024 WL 3159821, at *5 (S.D.N.Y. June 25, 2024) (citation modified, collecting cases). As discussed below, the Court need not venture beyond the Complaint to reject the spurious standing arguments made in Defendant's Cross-Motion.

"Throughout Plaintiff's employment, Defendant scheduled Plaintiff to work five days per week, Monday to Friday, from 9:00 a.m. to 5:00 p.m., with what was supposed to be one thirty-minute unpaid break per day, for a total of thirty-seven and one half scheduled work hours per week." Compl. ¶ 18. Nevertheless, Defendant "frequently" directed Plaintiff, through various supervisors, to complete tasks that required work beyond his regularly scheduled work hours. Compl. ¶ 19. Logging patient-interaction documentation was one such task. *Id.* When this occurred, Plaintiff nonetheless was required to submit timesheets reflecting a 5:00 p.m. clock-out. *Id.* If he failed to do so, his supervisors "reprimanded" him and "edited his timesheet to show an earlier clock-out time." *Id.* Plaintiff also "frequently" worked during his lunch break, but was required to clock out during this time. *Id.*

"For the two-week period of March 14 through March 27, 2024, Defendant required Plaintiff to work, and Plaintiff did work . . . a total of 102 hours . . . , forty-six during the first week and fifty-six during the second week." Compl. ¶ 20 (citation modified). Defendant, however, paid him only "for 77.16 hours at his regular rate of pay, and nothing for the remaining 24.84 hours . . . , 2.84 of which should have been paid at Plaintiff's regular rate . . . , and at least twenty-two of which should have been at" his overtime rate.[3] *Id.* "All of Plaintiff's supervisors" indicated to Plaintiff that he should work beyond his regularly scheduled hours even though he would not be compensated accordingly, telling "Plaintiff that if he wanted to be paid for time worked outside of his regular schedule, he would have to use accrued paid leave." Compl. ¶ 12.

Moreover,

> Defendant treated all of the Would-Be FLSA Plaintiffs similarly. Specifically, they all (1) performed similar tasks . . . ; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required rate of

[3] "Additionally, during this week [sic], Defendant paid Plaintiff at the effective hourly rate of $12.10, which falls below Maryland's minimum wage rate of $15.00 per hour at the time." *Id.*

> one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

Compl. ¶ 11.

These allegations pertaining to all the Would-Be FLSA Plaintiffs are further developed in Plaintiff's Declaration. Specifically, Plaintiff attests that he "worked with as many as two hundred other non-managerial clinical care coordinators who performed the same and/or similar duties as [he] did," with "about ten" of them working "in his group," "supervised by the same supervisors." Pl. Decl. ¶ 12 (citation modified). "These employees included Maria Lavieri De Tusa, Paola Rosario, Ola [last name unknown], Richardson [last name unknown], and Anusha [last name unknown]." *Id.*

Plaintiff attests that he knows that "the way that Defendant paid [him] for [his] work was the same or similar to the way that it paid all of its other non-managerial clinical care coordinators," Pl. Decl. ¶ 11 (citation modified)—in particular those in his "group"—because of his "experience working with these individuals and [his] conversations with them," Pl. Decl. ¶ 12. He and his "co-workers . . . regularly complained among [themselves] through Defendant's cloud-based software application and on [their] personal cellphones about [Defendant's] pay practices." *Id.*

Plaintiff further attests that, after these conversations, he complained to his then-current supervisor, who told him "that Defendant would not pay [Plaintiff] overtime for all hours worked past [Plaintiff's] regularly scheduled work hours despite Defendant's knowledge that [Plaintiff] worked past [Plaintiff's] scheduled shift to complete tasks on a frequent basis." Pl. Decl. ¶ 13. Three subsequent supervisors directed him to "work past [his] regularly scheduled work hours despite [their] knowledge that Defendant would not pay [him] all overtime owed for that work." *Id.*

## STANDARD

### I. Article III Standing

"Article III of the Constitution 'confines the federal judicial power to the resolution of "Cases" and "Controversies."'" *Lugo v. City of Troy, New York*, 114 F.4th 80, 86 (2d Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2)). "Standing to sue is a doctrine rooted in the traditional understanding of" this limitation of the federal judicial power. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

To have standing to sue, a "plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). In addition, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (citation modified). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citation modified).

"At the pleading stage a plaintiff must allege facts that affirmatively and plausibly suggest that he has standing to sue, and [courts] assume that all well-pleaded factual allegations in the complaint are true unless they are contradicted by more specific allegations or documentary evidence." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 112 (2d Cir. 2022) (citation modified). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). A facial challenge is "based solely on the allegations of the complaint and exhibits attached to it." *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020) (citation modified). "The plaintiff has no

evidentiary burden when confronted with a facial standing challenge." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021) (citation modified).

By contrast, in opposing a fact-based challenge, "plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if" the defendant's evidence "reveal[s] the existence of factual problems in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (citation modified). Nevertheless, "plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.*

"Standing," ultimately, "is about who may access the courthouse, not about the merits of the claims to be heard once inside." *Soule v. Connecticut Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023). "The standing issue must therefore be resolved irrespective of the merits of the substantive claims." *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (citation modified).

## II. Collective Certification

"One of the principal conditions to proceeding collectively under § 216(b) is that the named plaintiffs be 'similarly situated' to the opt-in 'party plaintiffs.'" *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (citation modified, quoting 29 U.S.C. § 216(b)). Courts have developed a "two-step" process for "certifying" a collective action on this basis. *Id.*

Technically, no "certification" occurs, and the process is "not required by the terms of FLSA or the Supreme Court's cases." *Myers v. Hertz Corp.*, 624 F.3d 537, 555, 555 n.10 (2d Cir. 2010); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 n.1 (2013) ("Lower courts have borrowed class-action terminology to describe the process of joining co-plaintiffs under 29 U.S.C. § 216(b)."). Nevertheless, the process proceeds as follows:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. At step two, with

> the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs.

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citation modified).

This case is at step one. Accordingly, Plaintiff need only "make a modest factual showing that [he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (citation modified). More than "unsupported assertions" is required, but "the standard of proof" "remain[s] . . . low . . . because the purpose of this first stage is merely to determine ***whether*** similarly situated plaintiffs do in fact exist." *Id.* (citation modified).

This determination is made on the basis of "pleadings and affidavits." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (collecting cases). "All inferences are drawn in favor of the plaintiff." *Cuaya v. VI Dev. Grp., LLC*, No. 19-cv-4290 (JLC), 2020 WL 5494371, at *7 n.5 (S.D.N.Y. Sept. 10, 2020) (citation modified). Accordingly, "defendants may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits." *Barkley v. NYU Langone MSO, Inc.*, No. 24-cv-9747 (AT), 2025 WL 1435530, at *2 (S.D.N.Y. May 19, 2025) (quoting *Varghese v. JP Morgan Chase & Co.*, No. 14-cv-1718, 2016 WL 4718413, at *7 (S.D.N.Y. Sept. 9, 2016) (collecting cases)); *see also Richards v. Empire Scaffolding Sys., Inc.*, No. 21-cv-6638 (VEC), 2022 WL 2384154, at *3 n.3 (S.D.N.Y. July 1, 2022) (quoting *Colon v. Major Perry St. Corp.*, No. 12-cv-3788 (JPO), 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013)); *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 272 (S.D.N.Y. 2012) ("At this stage, however, defendants' equally untested declarations do not undermine plaintiffs' showing." (collecting cases)).

Conditional certification is not automatic, and a plaintiff's showing in support of certification cannot be entirely conclusory. *See, e.g.*, *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. 2006). Nevertheless, courts have recognized that the standard at this initial stage is "'fairly lenient,' [such that] courts applying it 'typically grant conditional certification.'" *Amador v. Morgan Stanley & Co.*, No. 11-cv-4326 (RJS), 2013 WL 494020, at *3 (S.D.N.Y. 2013) (citation modified, quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-cv-332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. 2009)); *see also Tay v. New York & Presbyterian Hosp.*, No. 22-cv-8379 (KMK), 2024 WL 4286226, at *3 (S.D.N.Y. Sept. 24, 2024).

## **ANALYSIS**

### I. **Standing**

Defendant argues that Plaintiff lacks standing to pursue his claims because he was not injured. *See* CM at 9–12. Defendant also argues that Plaintiff lacks standing to sue on behalf of the Would-Be FLSA Plaintiffs to the extent that he is not similarly situated to them. *See id.* at 13–14. As Plaintiff observes, these arguments—to say nothing of the waived one concerning personal jurisdiction—are borderline frivolous.[4] Reply at 2 n.2.

In arguing that Plaintiff has not suffered an injury in fact, Defendant relies heavily upon the Olsen Declaration and the Timesheets. *See* CM at 8 ("Defendant submits the affidavit of Supervisor Jazmin Olsen and Plaintiff's time sheet records solely to address the threshold jurisdictional issue of standing, which is proper at this stage and does not trigger Rule 56."). In

---

[4] The Court is likewise unmoved by Defendant's throwaway argument that "Plaintiff's voluntary resignation and work performance issues directly undermining standing"—an argument for which Defendant cites no authority beyond an irrelevant sentence from *Lujan*. CM at 16 (citation modified, noting that, "to establish Article III standing, a plaintiff must demonstrate that the alleged injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action' of the plaintiff or a third party." (citation modified, quoting *Lujan*, 504 U.S. at 560–61)). It defies reason to suggest that an employee is deprived of ***standing*** to sue his employer for wage theft because he had unspecified "performance issues" and later quit his job.

short, Defendant asserts that "these records demonstrate that Plaintiff had access to, and utilized, the established mechanisms for recording and receiving compensation for overtime work when it occurred." *Id.* at 11 (citation modified).

In Defendant's view, because "Plaintiff regularly entered, monitored, and corrected his own time, and . . . overtime was recorded and paid[, ]Plaintiff cannot plausibly allege any unpaid-overtime injury-in-fact." *Id.* Any attempt to do so with reference to undocumented hours worked is, accordingly, "circular and conclusory." CR at 8. "Where a plaintiff's own documentation contradicts the alleged harm," Defendant assures the Court, "courts have consistently found that the plaintiff has failed to demonstrate the concrete injury necessary for Article III standing." CM at 11 (citing no example of any court doing anything similar to what Defendant proposes); *but see Indergit v. Rite Aid Corp.*, No. 08-cv-9361 (PGG), 2009 WL 1269250, at *5 n.1 (S.D.N.Y. May 4, 2009) ("Indeed, the resolution of motions for conditional certification often turns on issues of fact that [defendant] mistakenly characterizes as threshold standing issues." (collecting cases)).

This is a sophistic attempt by Defendant to taint the Court's view of Plaintiff's claims with documents not properly considered at this stage of the litigation. *See Richards*, 2022 WL 2384154, at *3 n.3 (declining, in adjudicating a motion to conditionally certify an FLSA collective, to "consider the declarations appended to defendants' opposition brief, as defendants may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits" (citation modified)); *see also Morris*, 896 F. Supp. 2d at 271–72 ("At this stage, however, defendants' equally untested declarations do not undermine plaintiffs' showing." (collecting cases)); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 450 n.3 (S.D.N.Y. 2013) ("Even if the Court could consider the Defendants' declarations, statements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion." (citation modified)). In so doing, Defendant asks the Court to flout

the Second Circuit's admonition to "refrain" from adjudicating the merits of a complaint under the guise of an inquiry into standing. *Soule*, 90 F.4th at 45.

The Court declines that invitation. "Plaintiff clearly has standing, as he alleges that Defendants deprived him of the overtime pay to which he is statutorily entitled." *Douglas v. Anthem Prods., LLC*, No. 18-cv-5789 (VEC), 2019 WL 78988, at *4 (S.D.N.Y. Jan. 2, 2019). Of course, the Court or a jury might ultimately find that Plaintiff's allegations are without merit, but "standing in no way depends on the merits of the claim." *Soule*, 90 F.4th at 46 (citation modified).

Defendant's arguments that Plaintiff lacks standing to sue over "claims outside his employment period," CM at 13 (cleaned up), or "on behalf of New York[-]based employees," *id.* at 14, are similarly specious. There is no requirement that a Plaintiff seeking conditional certification of an FLSA collective demonstrate "class standing." *Id.* at 13 (quoting *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014)).

"Courts in this Circuit recognize that FLSA collective actions differ from Rule 23 actions in that each FLSA plaintiff has party status and may pursue [his] own individual claim." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-cv-8410 (ER), 2021 WL 4460632, at *8 (S.D.N.Y. Sept. 28, 2021) (collecting cases); *see also Scott*, 954 F.3d at 520 ("The FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." (citation modified)). As a result, "so long as the named plaintiff in an FLSA action has standing as to his or her own individual claim, a collective action can be certified as to other similarly situated employees." *Umbrino v. L.A.R.E Partners Network, Inc.*, 585 F. Supp. 3d 335, 364 (W.D.N.Y. 2022) (citing *Douglas*, 2019 WL 78988, at *4); s*ee also Chen v. Lilis 200 W. 57th Corp.*, No. 19-cv-7654 (VEC), 2023 WL 2388728, at *6 n.10 (S.D.N.Y. Mar. 7, 2023) (similar).

Defendant's arguments on this score concern not Plaintiff's standing, but whether he "is similarly situated" to the Would-Be FLSA Plaintiffs—a question "appropriate[ly]" resolved "in the context of ruling on [his] . . . FLSA conditional certification motion." *Indergit*, 2009 WL 1269250, at *3. The Court turns to that motion now.

## II. Conditional Collective Certification

Certification of an FLSA collective is appropriate where "named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516. "Dissimilarities in other respects should not defeat collective treatment." *Id.* (citation modified). Moreover, at the the conditional first stage of the process, the Court bears in mind that it "may later, after having the benefit of full discovery, decertify the [collective] or divide it into sub[collectives], if appropriate." *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007)).

Plaintiff has made the requisite "modest factual showing," *Glatt*, 811 F.3d at 540 (citing *Myers*, 624 F.3d at 555), that he and the Would-Be FLSA Plaintiffs "share one or more similar questions of law or fact material to the disposition of their FLSA claims."[5] *Scott*, 954 F.3d at 521. As already recounted, Plaintiff's Complaint, "supplemented by [his] . . . affidavit[]," *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015) (collecting cases), describes a situation where he and other "non-managerial clinical care coordinators . . . worked similar hours and were paid in the same way" for "the same and/or similar duties." Pl. Decl. ¶ 12.

Specifically, Plaintiff attests that "they worked after clocking[]out due to the heavy workload that Defendant imposed, which resulted in them working in excess of their regular

[5] The Court expresses no opinion with respect to Would-Be FLSA Plaintiff Zion Velasquez, whom Defendant insists "was employed by a separate entity with its own management and supervisory structure," Olsen Decl. ¶ 11; *see also* CM at 23, because he has since withdrawn any claims he might have against Defendant. *See* [ECF No. 30].

schedule and in excess of forty hours in a week." *Id.* According to Plaintiff, if their timesheets reflected this, "Defendant reprimanded them and randomly adjusted their timesheet downward to show an earlier clock-out time, resulting in Defendant not paying them for all of their hours worked, including overtime hours." *Id.* Plaintiff knows this because he and his co-workers "regularly complained among [themselves] through Defendant's closed-based software application and on [their] personal cellphones." *Id.*

This is a perfectly sufficient basis upon which to conditionally certify an FLSA collective. *See Andujar v. SKYC Mgmt. LLC*, No. 1:23-cv-8764 (MKV), 2024 WL 4799893, at *2 (S.D.N.Y. Nov. 15, 2024) ("Each plaintiff submitted a sworn declaration attesting, based on personal knowledge and conversations with other superintendents, that defendants had a policy of requiring all superintendents to work in excess of forty hours per week without proper compensation." (citation modified) (collecting cases)); *Alvarado v. Villas Mkt. Place Inc.*, No. 19-CV-4036 (VEC), 2020 WL 91489, at *2 (S.D.N.Y. Jan. 8, 2020) ("Plaintiff asserts in a sworn affidavit that two cooks and two stock persons told him that they routinely worked before and after their scheduled shifts but were never paid for that time, and that their work hours were rounded down on a weekly basis.").

As Defendant itself acknowledges, "courts have recognized that 'an affidavit from a single employee may be sufficient to establish the basis for conditional certification.'" CM at 20 (quoting *Soonja Son v. Hand Hosp.*, 768 F. Supp. 3d 526 (S.D.N.Y. 2025)). Indeed, to put a somewhat finer point on it, "courts in this district 'routinely certify conditional collective actions based on the plaintiff's affidavit declaring they have personal knowledge that other coworkers were subjected to similar employer practices.'" *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 563 (S.D.N.Y. 2015) (citation modified) (quoting *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14-cv-813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014) and collecting cases); *see also Veleva*

*v. Sebastian's Pizzeria Inc.*, No. 1:24-cv-04930 (MKV), 2025 WL 507703, at *3 (S.D.N.Y. Feb. 14, 2025); *Cuaya v. VI Dev. Grp., LLC*, 2020 WL 5494371, at *6 (S.D.N.Y. Sept. 10, 2020); *Alvarado*, 2020 WL 91489, at *2; *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 369–70 (S.D.N.Y. 2014); *Jeong Woo Kim*, 985 F. Supp. 2d at 445–46.

Nevertheless, Defendant argues, "Plaintiff cannot even fully identify three (3) of the five (5) colleagues he claims to have had . . . conversations with, let alone provide any factual detail about their similarly situated work circumstances." CM at 20. To begin with, at least as a general matter, Plaintiff is "not required to identify by name all potential opt-in plaintiffs." *Andujar*, 2024 WL 4799893, at *3. This proposition should be somewhat obvious, given that "the purpose of granting conditional certification and issuing a notice is 'to determine whether 'similarly situated' plaintiffs do in fact exist.'" *Id.* (quoting *Myers*, 624 F.3d at 555)).

Of course, "where a plaintiff bases his assertions regarding similarly situated employees upon his own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved." *Cuaya*, 2020 WL 5494371, at *5 (S.D.N.Y. Sept. 10, 2020) (citation modified, collecting cases). Plaintiff here does identify "certain" Would-Be FLSA Plaintiffs "by name." *Ramos v. Platt*, No. 1:13-cv-8957 (GHW), 2014 WL 3639194, at *2–3 (S.D.N.Y. July 23, 2014); *see* Pl. Decl. ¶ 12 (listing "Maria Lavieri De Tusa, Paola Rosario, Ola [last name unknown], Richardson [last name unknown], and Anusha [last name unknown]"). That he does so with reference only to first names in a few instances is "not necessarily a shortcoming." *Cuaya*, 2020 WL 5494371, at *5 (quoting *Zamora v. L Plus L Prods. LLC*, No. 19-CV-1506 (GBD) (RWL), 2019 WL 5460559, at *5 (S.D.N.Y. Oct. 15, 2019)).

Plaintiff goes on to describe how he talked with these Would-Be FLSA Plaintiffs—online or over text from his home in Maryland—and to situate these conversations in time—shortly

before he complained to his supervisor "in January 2024." Pl. Decl. ¶¶ 12–13. This level of detail readily exceeds the "insufficient descriptions, conclusory allegations, and unsupported assertions" that are regarded as "too slender a basis to carry even [the] modest burden" applicable on a motion for conditional certification. *Lopez v. St. Luke's Roosevelt Hosp. Ctr.*, No. 23-cv-2880 (JPC) (GS), 2024 WL 836480, at *5 (S.D.N.Y. Feb. 28, 2024).

The Court is, however, sympathetic to Defendant's argument that "Plaintiff worked exclusively remotely from Maryland for a limited eight-month period under a discrete set of supervisors, yet seeks to certify a nationwide collective spanning multiple years, multiple locations, and employees working under different supervisors and, in some instances, different employer entities."[6] CM at 24. More to the point, Plaintiff asserts that he "worked with as many as two hundred other non-managerial clinical care coordinators," but his "experience working with these individuals and [his] conversations with them" extend to only "about ten" who were "in his group" and "supervised by the same supervisors." Pl. Decl. ¶ 12 (citation modified).

Plaintiff provides no basis—not even a "modest" one—upon which the Court could find that all 200 non-managerial clinical care coordinators employed nation-wide by Defendant at the same time as Plaintiff were "subject to a common unlawful policy or practice." *Munoz v. Grp. US Mgmt. LLC*, 348 F.R.D. 192, 203 (S.D.N.Y. 2025) ("However, to the extent the proposed collective extends to ***all*** tipped and non-tipped non-exempt employees, Plaintiffs have not satisfied their burden."), *reconsideration denied*, No. 22-CV-4038 (MKV) (HJR), 2025 WL 615132 (S.D.N.Y. Feb. 11, 2025). Indeed, as Defendant points out, "Plaintiff's theory is expressly supervisor-

[6] The Court notes again that this last point—that Plaintiff seeks to conditionally certify a collective that includes Would-Be FLSA Plaintiffs who worked for "different employer entities"—appears to have been mooted by the withdrawal of Zion Velasquez.

specific, yet the proposed collective sweeps in Care Coordinators under all supervisors." CM at 25.

Particularly given the vagaries associated with remote employment, this will not do. "If evidence of a more widespread practice is adduced during discovery, [the Parties] can revisit the issue of a [broader] class." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 667 (S.D.N.Y. 2013). For now, the collective will extend no further than the "group" of employees Plaintiff identifies as having worked under the same supervisors as him. Pl. Decl. ¶ 12.

There is no support, however, for Defendant's argument that "any notice should be confined to employees who worked during Plaintiff's employment period." CM at 26 (citation modified). Indeed, "as other district courts have held, a modest temporal gap between the plaintiff's employment and the employment period of other class members does not prohibit or even counsel against conditional certification." *Douglas*, 2019 WL 78988, at *4 (citation modified) (collecting cases); *see also Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 352 (S.D.N.Y. 2017) ("It makes little sense to hold that simply because there is ***no*** overlap between the representative plaintiff's recoverable wages and the opt-in plaintiff's recoverable wages that conditional certification is inappropriate." (citation modified)).

## III. Notice

The Court is endowed with "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."[7] *Hoffmann-La Roche Inc.*

---

[7] Naturally, the Court recognizes that "conditional certification is not a discovery device, and plaintiffs may not use court-authorized notice to search for evidence of similarity they have failed to establish at the threshold." CM at 26 (citing *Sanchez v. JMP Ventures, L.L.C.*, No. 13-cv-7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014)). The Court accordingly does not approve any notice beyond the scope of the collective conditionally certified in this Opinion.

*v. Sperling*, 493 U.S. 165, 170 (1989) (expounding Section 216(b)). In this connection, Plaintiff requests that the Court implement the following mechanisms for providing notice to the conditionally certified collective:

- A period dating back to three years before the filing of the Complaint, MFC at 15;
- Equitable tolling of the statute of limitations with respect to the Would-Be FLSA Plaintiff's claims from the date on which Plaintiff filed the Motion for Certification through the issuance of this Opinion, *id.* at 20;
- An Order directing Defendant to produce the Would-Be FLSA Plaintiff's contact information, *id.* at 16;[8]
- Permission for Plaintiff to send a notice and a follow-up reminder via mail, email, text message, and through Defendant's cloud-based software application, *id.* at 17; and
- A sixty-day opt-in period, *id.*

The Court briefly addresses each request in turn.

Because the FLSA's statute of limitations for willful violations is three years, "courts frequently set a notice period spanning the three years preceding the filing of the complaint." *Sanchez*, 2024 WL 3159821, at *12. Given the analysis above, the Court sees no reason to deviate from this standard practice here.

The Court recognizes that, in appropriate circumstances, it may be appropriate to toll the statute of limitations with respect to the Would-Be FLSA Plaintiff's claims for the period between "the date Plaintiff[] first requested permission to move for collective action certification" and the date of the issuance of the opinion granting certification. *Orbetta v. Dairyland USA Corp.*, No. 20-cv-9000 (JPC), 2024 WL 3385640, at *9 (S.D.N.Y. July 12, 2024). Nevertheless, "the application of the equitable tolling standard is highly case-specific," and Plaintiff bears the burden of demonstrating that tolling is appropriate. *Munoz*, 348 F.R.D. at 209 (citation modified). The briefing in this case, however, is relatively sparse, high-level, and legal—rather than factual—in

[8] Defendant voices no objection to this request, which the Court intends to grant.

nature. The Court is therefore reluctant to grant "blanket tolling," *id.*, and prefers instead to "consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate" if and when the issue actually arises. *Sanchez*, 2024 WL 3159821, at *13 (collecting cases).

Finally, citing no applicable authority, Defendant argues that "notice should further be limited to mail only, exclude text messages or internal platforms that risk confusion or coercion, and provide a single opt-in period of no more than forty-five (45) days with no reminder notice." CM at 26 (citation modified). The Court rejects this counterproposal in favor of Plaintiff's amply supported approach. *See* CR at 16–18 (collecting cases).

## CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that Plaintiff's Motion for Certification is GRANTED IN PART, and Defendant's cross-motion to dismiss is DENIED. The Clerk of Court is respectfully requested to terminate docket entries fourteen and twenty.

The collective conditionally certified is as follows:

> Current and former non-managerial employees, who at any time during the applicable FLSA limitations period ***beginning June 11, 2022***, performed any work for Defendant as a clinical care coordinator ***under the supervision of Fabio Vasquez, Kendra Cruickshank, Jhenelle Hutchinson, or Rosa Perez***, ~~or in any other similar position,~~ and who consent to file a claim to recover damages for unpaid overtime compensation and liquidated damages that are legally due to them.

For the avoidance of any possible doubt, the Court notes in closing that it takes no position whatsoever on the merits of Plaintiff's or the Would-Be FLSA Plaintiffs' claims. *See Hoffmann-La Roche*, 493 U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process, . . . trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.").

**SO ORDERED.**

**Date: September 24, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**